LAKEITHA BOSTON )
        Plaintiff, )
  )
v. )        Case No.  4:21-cv-00058-BP
  )
TRIALCARD INCORPORATED )
        Defendant. )

## 2ND AMENDED COMPLAINT

COMES NOW Plaintiff, LAKEITHA BOSTON ("Plaintiff" or "Ms. Boston") by and through counsel, in her second amended complaint against Defendant, TRIALCARD INCORPORATED ("Defendant" or "TrialCard"), and for her cause of action against on claims of discrimination and retaliation. Plaintiff seeks compensatory and punitive damages against Defendant and states as follows[1]:

### NATURE OF THE ACTION AND SUMMARY OF ALLEGATIONS

1. Plaintiff brings this action against Defendant for unlawful discriminatory, and retaliatory conduct in employment pursuant to the Missouri Human Rights Act ("MHRA") R.S.Mo. §§ 213.010 *et seq.* and 42 U.S.C. 2000e *et seq*., 42 U.S.C. §1981 (Civil Rights Act of 1866), as amended ("§1981") as result of Defendant's: a) unlawful denial of Ms. Boston's employment opportunities based on her sex, race, and disability; b) retaliation for asserting her rights and reporting discriminatory conduct, and c) engaging in other related unlawful acts, conduct, and practices.

---

[1] Leave of the Court is not necessary as this Amended Complaint is filed pursuant to the Court's Order issued June 4, 2021. ECF No. 31.

2. The acts, conduct, and practices which form the basis for this action have resulted in Defendant discriminating against Ms. Boston on the basis of her race, sex, and disability with respect to the terms, conditions, and privileges of her employment, and the procedure or manner in which Defendant evaluated Ms. Boston's qualifications for continued employment opportunities has resulted in prohibited race, sex, and disability discrimination and retaliation.

3. The related acts, conduct, and practices of Defendant are a violation of the MHRA and .

4. The unlawful conduct of TrialCard deprived Ms. Boston of her employment, directly resulted in the significant loss of financial compensation, and other benefits which she would have earned and been entitled to but for the discrimination and retaliation alleged in this Petition.

5. Defendant's decision to remove Ms. Boston from her employment and deprive her of employment was pretext for unlawful sex, race, and disability discrimination, as well as retaliation.

6. In violation of the MHRA and FMLA, Defendant repeatedly retaliated against Ms. Boston for engaging in protected activity, including, but not limited to, her reporting the discriminatory behavior on the basis of race, sex, and disability by agents of Defendant.

## Parties, Jurisdiction and Venue

7. Ms. Boston resides at 5125 South Norfleet Road, Independence, Jackson County, Missouri, and is a citizen of the United States of America.

8. Up until her unlawful termination, Ms. Boston had been a devoted, loyal, and productive employee of TrialCard.

9.      Ms. Boston is a 29-year-old African American female.

10.     Defendant, TrialCard, Incorporated, is a national employer with its principal place of business and/or corporate headquarters located at 2250 Perimeter Park Dr. #300, Morrisville, North Carolina who has a registered agent in CT Corporation System located at 120 South Central Avenue, Clayton, St. Louis County, Missouri. TrialCard has a Missouri office/workplace located at 2001 Northeast 46th Street, Kansas City, Clay County, Missouri.

11.     Plaintiff was at all times relevant in this petition an employee of Defendant.

12.     Jurisdiction is proper in the State of Missouri as the unlawful employment practice complained of herein occurred in Clay County, Missouri.

13.     This Court has jurisdiction over the claims set out in this Petition under 28 U.S.C. §1331 because Plaintiff's claims under Section 1981 arise under federal law.

14.     Venue is proper under R.S.Mo. § 508.010 because this cause of action arose in whole, or in part, in Clay County, Missouri.

15.     TrialCard treated Plaintiff as an employee as it related to taxes, unemployment, workers' compensation, and compensation.

16.     At all times during Plaintiff's employment with TrialCard, TrialCard was Plaintiff's employer subject to the laws, rules, and regulations at issue herein.

17.     Plaintiff filed a charge of discrimination against TrialCard with the Equal Employment Opportunity Commission ("EEOC") on or about April 17, 2020, regarding claims of race, disability, and sex discrimination as well as retaliation and other unlawful acts, conduct, and practices set forth within those charges and arising out of and related to that therein are included with this Petition.

18.     Plaintiff's EEOC charge was issued a number of 563-2020-01820 by the EEOC shortly after the filing of the charge.

19.     Plaintiff filed a Request for a Notice of Right to Sue from the Missouri Commission on Human Rights ("MCHR") on August 11, 2020.

20.     Plaintiff received a Notice of Right to Sue from the MCHR with respect to said charge on October 26, 2020.  Plaintiff filed this action within 90 days of the issuance of said Notice of Right to Sue. (A copy of the charge and right to sue letter is attached as Exhibit A).

21.     Plaintiff has exhausted all her administrative remedies with the EEOC and MCHR.

22.     Plaintiff has fully complied with any and all prerequisites to jurisdiction in this Court under MHRA and related law.

## FACTUAL ALLEGATIONS

23.     Plaintiff is an African American/Black, female citizen of the United States.

24.     Ms. Boston began her employment with TrialCard during or around November 2018 as a reimbursement specialist.

25.     Prior to the TrialCard's discriminatory treatment of Ms. Boston which led her to file this action, TrialCard rewarded Ms. Boston's hard work, dedication, and exemplary performance with a promotion to a supervisor position.

26.     While employed by TrialCard, Ms. Boston was an excellent employee with no disciplinary or performance issues.

27.     In approximately October 2019, Plaintiff's mental health started taking a turn for the worst and she started suffering from a bout of severe depression.

28.     During or around December 2019, Ms. Boston's medical provider diagnosed her with mental health medical conditions which qualify as disabilities under the MHRA, which includes but is not limited to extreme depression and anxiety ("disability").

29.     Ms. Boston's medical condition can significantly interfere with her major life activities during flare ups and such activities include but are not limited to her mood, thoughts, behavior, sleep, ability to think, communicate, and energy level to name a few.

30.     Immediately after being diagnosed with the disability on or about December 2019, Plaintiff notified Josh, a white male who is a manager at TrialCard about her condition because she felt that it was possibly interfering with her performance and she was worried she would be disciplined if she did not disclose her condition and seek an accommodation if necessary.

31.     Plaintiff also advised Josh that she was worried about her job being in jeopardy because of what had occurred with other black female employees of TrialCard in the past.

32.     Plaintiff was concerned about her job security despite the fact that she was a strong performer.

33.     Plaintiff would suffer from crying spells and anxiety attacks which caused management concern about Plaintiff's ability to perform her job duties.

34.     Plaintiff utilized company resources to seek help for her mental condition.

35.     Immediately after disclosing her medical condition, Plaintiff's manager and other members of management began micromanaging Plaintiff and nitpicking her work.

36.     Plaintiff reasonably believes that TrialCard began to document her performance in an effort to discipline and ultimately terminate her employment.

37.    During or around February 2020, Ms. Boston's medical provider advised her that her condition would require her to seek medical treatment over a period of time of a couple weeks and requested that she be excused on a short leave of absence for medical reasons.

38.    Ms. Boston's medical provider also suggested Ms. Boston take a short leave of absence from work so she could take better care of and continue treatment for her mental health and diagnoses.

39.    Shortly after Ms. Boston was recommended to take leave by her doctor, Ms. Boston approached TrialCard, notified them of her diagnoses, and sought federally protected Family Medical Leave Act ("FMLA") leave to cover her time off from work.

40.    Plaintiff arrived at work on or about February 3, 2020, because she had not received approval from TrialCard to be off.

41.    Ashli, a white female manager, told Plaintiff that she did not think Plaintiff should be working in her condition.

42.    Dena, another white female manager, also told Plaintiff she did not think she should be working in her condition.

43.    Dena also advised Plaintiff that she would be the guinea pig since no other employees had requested company benefits for a medical condition.

44.    Plaintiff was concerned with the response from Dena because Plaintiff reasonably believed from her experience at TrialCard that numerous employees being off for medical related reasons during her employment at TrialCard including Dena, Ashli, and Josh to name a few.

45.    Ms. Boston's FMLA request initially verbally approved by TrialCard's management.

46.     After reporting her disability and requesting FMLA, Plaintiff was micromanaged and nitpicked, and treated adversely in comparison to similarly situated employees who were not African American, female, or disabled.  Those employees are reasonably believed to be Josh, Ashli, and Dena to name as few.  Plaintiff believes there were others as well but does not recall the names of all the TrialCard employees.

47.     Plaintiff's position as a manager put her in position to know the nature of employees and peers time off request.

48.     Plaintiff's doctor advised Plaintiff that she needed to be off work for approximately two weeks and then return to work with a limited schedule of working three days a week and being on intermittent FMLA leave the remaining days until she could transition back to full-time hours.

49.     After Plaintiff's initial two week leave request was verbally approved by her manager, Plaintiff did not report to work per her instructions from her doctor.

50.     Shortly after being placed on leave, Plaintiff's doctor advised Plaintiff that he would be extending Plaintiff's leave before she would be cleared to return to work.

51.     Plaintiff notified TrialCard management of the change to her doctor's initial order.

52.     Ashli responded to Plaintiff's notice regarding her extended leave by telling Plaintiff that she is glad Plaintiff's leave is being extended because she was concerned about Plaintiff's ability to return to work.

53.     TrialCard management constantly called and communicated with Ms. Boston while on leave accusing her of not following company policies and procedures including but not limited to being in violation of the company's attendance policy despite those allegations being untrue.

54.     Plaintiff advised her managers that she was fearful that she would lose her job as the result of her disclosing her medical condition.

55.    TrialCard provided false information regarding Plaintiff to the third-party administrator handling TrialCard's FLMA request.

56.    On or about February 28, 2020, after making the complaints despite Ms. Boston following all instructions and providing TrialCard with proper notice of her FMLA leave, TrialCard unlawfully and unjustifiably terminated Ms. Boston's employment.

57.    Prior to Plaintiff disclosing her medical condition to TrialCard, she reasonably believes several other African American female employees disclosed their medical condition to the company and were arbitrarily denied request for time off, or were targeted for misconduct and subjected to increased scrutiny and nitpicking regarding their performance by management.

58.    Those individuals include but are not limited to Aumariece Sherman, Crystal Shyne, and Jackie Burford to name a few. All of these individuals are African American females.

59.    Several non-African American employees missed time at work due to a medical condition without consequence.

60.    When Defendant unlawfully terminated Ms. Boston's employment Ms. Boston was still able to perform her work duties and notified Defendant of her desire to do so.

61.    Ms. Boston desperately needed an income stream and her termination by Defendant created a substantial hardship.

62.    Ms. Boston did not receive income she is owed by Defendant and still is owed wages for services rendered.

63.    Ms Boston was denied unemployment benefits from Defendant as the result of Defendant falsely accusing Plaintiff of misconduct.

64. In additional to severe economic loss, Ms. Boston also suffered significant anxiety, depression, anger, and humiliation during a time of great vulnerability at the hands of the Defendant.

65. Law required TrialCard to engage in an interactive process of identifying the precise limitations of Ms. Boston's mental condition, restrictions put into place by her doctor, and potential reasonable accommodations which could overcome those limitations and allow for Ms. Boston's continued employment.

66. At all times relevant to the factual claims which form the basis of this action Defendant has been subject to the requirements of the MHRA which requires the defendant to engage in the interactive process identified above with its disabled employees.

## COUNT I-

### Prohibited Disability Discrimination and Harassment Under the MHRA

COMES NOW, the Plaintiff, and for Count I of her cause of action for discrimination pursuant to the MHRA states:

67. Plaintiff hereby restates and incorporates by reference, repeats and re-alleges each and every allegation contained herein this petition as if fully set forth herein this Paragraph or this count.

68. Ms. Boston's doctor diagnosed her with multiple mental health conditions during her employment, including depression and anxiety, which limited her major life activities as aforementioned herein and her ability to perform some of her duties and required leave from work, therefore Ms. Boston qualified as a disabled person as defined by the MHRA.

69. Ms. Boston disclosed her condition to TrialCard management in hopes of keeping a good rapport with TrialCard.

70. After disclosing her condition to TrialCard, Ms. Boston received arbitrary treatment such as but not limited to being targeted for discipline and misconduct while being treated adversely in comparison to her non-disabled coworkers.

71. Management told Plaintiff that the company had not dealt with any other medical requests for leave and advised that she would be the "guinea pig".

72. Plaintiff's managers repeatedly advised Plaintiff that they believed Plaintiff was not fit to perform her job duties under her condition.

73. Plaintiff was never told by management prior to disclosing her disability that she was having any performance issues.

74. Ms. Boston's non-disabled co-workers were treated more favorably than Ms. Boston and were not targeted for misconduct, micromanaged, or subjected to arbitrary discipline to name a few or told that they were not fit to perform their job.

75. Ms. Boston is and was qualified, with or without reasonable accommodation, to perform the essential functions of her job title while she was employed by TrialCard and did a good job despite her disability.

76. The MHRA does not permit an employer to discipline or terminate an employee because they have a disability if the employee can perform the essential functions of the job at issue without an accommodation.

77. Defendant discriminated against Ms. Boston because of her disability which is reasonably believed to be the motivating factor for TrialCard's treatment of Ms. Boston as described above herein.

78. Those unlawful acts as described in detail above herein include but are not limited to making derogatory comments to Plaintiff about her ability to perform her job because of her

disability; terminating Plaintiff; micromanaging, nitpicking, and falsely accusing Plaintiff of misconduct; as well as providing false statements regarding Plaintiff.

79.     As a result of the unlawful acts and conduct of Defendant as described and aforementioned herein this petition, Plaintiff has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out of pocket expenses, interest, mental and emotional distress, and reasonable attorney's fees (the exact amount of which will be determined at trial).

WHEREFORE, Plaintiff prays for the Court to find Defendant has violated the MHRA and therefore, Plaintiff is entitled to recovery for pecuniary and nonpecuniary damages, including lost wages and benefits, out of pocket expenses, interest, mental and emotional distress, and reasonable attorney's fees; and any other relief that this Court makes such other orders as it may deem just and proper in the circumstances.

## COUNT II-

### Prohibited Race Discrimination and Harassment Under the MHRA and § 1981

COMES NOW, the Plaintiff, and for Count II, of her cause of action for discrimination pursuant to the MHRA and §1981 states:

80.     Plaintiff hereby restates and incorporates by reference, every other paragraph set forth in this Complaint such as the factual allegations aforementioned as if fully set forth herein.

81.     Defendant subjected Ms. Boston to harassment and discrimination because of Ms. Boston's race.

82.     Plaintiff's race of African American was a motivating factor of the discrimination and harassment she received from Defendant as described in detail herein.

83.     During the course and scope of Plaintiff's employment, Defendant's representatives, agents, and employees, acting within the course and scope of their employment,

engaged in a pattern of practice of intentional discrimination against Plaintiff based on her race as described in the factual allegations aforementioned.

84.     Despite having no legitimate disciplinary concerns or other performance deficiencies Defendant denied, and continues to deny, Plaintiff of employment opportunities after she was unjustifiably terminated.

85.     Plaintiff was hired into and maintained a position in which she was qualified.

86.     Defendant through its representatives, agents, and employees engaged in these discriminatory practices with malice or reckless indifference to Plaintiff's lawfully protected rights under the MHRA.

87.     Plaintiff was not treated equally with regard to Defendant's application of its workplace policies.

88.     Defendant's application of its workplace policies in regard to Plaintiff were intentional acts of discrimination based on Plaintiff's race as described and aforementioned herein this petition.

89.     Plaintiff raised several complaints of discrimination with Defendant as described and aforementioned herein this petition.

90.     Prior to Plaintiff disclosing her medical condition to TrialCard, she reasonably believes several other African American female employees disclosed their medical condition to the company and were arbitrarily denied request for time off, or were targeted for misconduct and subjected to increased scrutiny and nitpicking regarding their performance by management.

91.     Those individuals include but are not limited to Aumariece Sherman, Crystal Shyne, and Jackie Burford to name a few.  All of these individuals are African American females.

92.     Defendant then finalized/ratified the denial of Plaintiff employment opportunities and terminated her employment.

93.     Similarly situated non-female and non-African American employees of TrialCard engaged in substantially similar if not identical conduct as Ms. Boston which includes but is not limited to missing substantial time at work and suffering from a medical condition that affects her attendance.

94.     Those similarly situated individuals who were treated differently than Plaintiff are reasonably believed to be Tiffany Ballach and Rachel Bower, both white females as well as other white female employees whose names is unknown at this time but Plaintiff recalls them being out for a medical issue but received no adverse treatment as the result of such.

95.     Plaintiff also recalls  similarly situated male employees such as but not limited to Michael Green and Kurt L/N/U missing time for medical related matters but not receiving any adverse treatment as the result.

96.     However, Plaintiff is not aware of any similarly situated non-female employee or non-African American employee of TrialCard being disciplined or terminated for their attendance when they suffered from a medical issue.

97.     Management level employees acting within the course and scope of their employment engaged in intentional discrimination against Plaintiff based on her race by treating her differently than others as previously stated.

98.     The actions and conduct set forth herein were outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others, and therefore Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter it and others from like conduct.

99.     As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff has suffered and will continue to suffer damages including lost wages and emotional distress.

WHEREFORE, Plaintiff prays for the Court to find Defendant have violated the MHRA and therefore, Plaintiff is entitled to recovery for pecuniary and nonpecuniary damages, including lost wages and benefits, for an award of compensatory and punitive damages; equitable relief; for her costs expended; for her reasonable attorneys' fees and expert's fees, out of pocket expenses, interest, mental and emotional distress; and any other relief this Court makes such other orders as it may deem just and proper in the circumstances.

## COUNT III-

### Prohibited Sex Discrimination and Harassment Under the MHRA

COMES NOW, the Plaintiff, and for Count III, of her cause of action for discrimination pursuant to the MHRA states:

100.     Plaintiff hereby restates and incorporates by reference, every other paragraph set forth in this Complaint such as the factual allegations aforementioned as if fully set forth herein.

101.     Defendant subjected Ms. Boston to harassment and discrimination because of Ms. Boston's sex.

102.     Plaintiff's female sex was a motivating factor of the discrimination and harassment she received from Defendant as described in detail herein.

103.     During the course and scope of Plaintiff's employment, Defendant's representatives, agents, and employees, acting within the course and scope of their employment, engaged in a pattern of practice of intentional discrimination against Plaintiff based on her sex as described in the factual allegations aforementioned.

104.    Despite having no legitimate disciplinary concerns or other performance deficiencies Defendant denied, and continues to deny, Plaintiff of employment opportunities after she was unjustifiably terminated.

105.    Plaintiff was hired into and maintained a position in which she was qualified.

106.    Defendant through its representatives, agents, and employees engaged in these discriminatory practices with malice or reckless indifference to Plaintiff's lawfully protected rights under the MHRA.

107.    Plaintiff was not treated equally with regard to Defendant's application of its workplace policies.

108.    Defendant's application of its workplace policies in regard to Plaintiff were intentional acts of discrimination based on Plaintiff's sex as described and aforementioned herein this petition.

109.    Plaintiff raised several complaints of discrimination with Defendant as described and aforementioned herein this petition.

110.    Prior to Plaintiff disclosing her medical condition to TrialCard, she reasonably believes several other African American female employees disclosed their medical condition to the company and were arbitrarily denied request for time off, or were targeted for misconduct and subjected to increased scrutiny and nitpicking regarding their performance by management.

111.    Those individuals include but are not limited to Aumariece Sherman, Crystal Shyne, and Jackie Burford to name a few.  All of these individuals are African American females.

112.    Defendant then finalized/ratified the denial of Plaintiff employment opportunities and terminated her employment.

113.     Similarly situated non-female and non-African American employees of TrialCard engaged in substantially similar if not identical conduct as Ms. Boston which includes but is not limited to missing substantial time at work and suffering from a medical condition that affects her attendance.

114.     Plaintiff also recalls  similarly situated male employees such as but not limited to Michael Green and Kurt L/N/U missing time for medical related matters but not receiving any adverse treatment as the result.

115.     However, Plaintiff is not aware of any similarly situated non-female employee or non-African American employee of TrialCard being disciplined or terminated for their attendance when they suffered from a medical issue.

116.     Management level employees acting within the course and scope of their employment engaged in intentional discrimination against Plaintiff based on her sex by treating her differently than others as previously stated.

117.     The actions and conduct set forth herein were outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others, and therefore Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter it and others from like conduct.

118.     As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff has suffered and will continue to suffer damages including lost wages and emotional distress.

WHEREFORE, Plaintiff prays for the Court to find Defendant have violated the MHRA and therefore, Plaintiff is entitled to recovery for pecuniary and nonpecuniary damages, including lost wages and benefits, for an award of compensatory and punitive damages; equitable relief; for her costs expended; for her reasonable attorneys' fees and expert's fees, out of pocket expenses,

interest, mental and emotional distress; and any other relief this Court makes such other orders as it may deem just and proper in the circumstances.

## COUNT IV

### Prohibited Retaliation and Harassment in Violation of the MHRA[2] and §1981

COMES NOW, the Plaintiff, and for Count IV of her cause of action for retaliation pursuant to the MHRA and §1981 states:

119.    Plaintiff hereby restates and incorporates by reference, repeats and re-alleges each and every allegation contained herein this petition as if fully set forth herein this Paragraph or this count.

120.    Ms. Boston engaged in protected activity under the MHRA as described and aforementioned herein this petition.

121.    Ms. Boston has suffered an adverse employment actions as a consequence of her engaging in protected activity under the MHRA including but not limited to termination/forced leave, and unpaid wages to name a few as described and aforementioned herein this petition.

122.    There is a direct causal connection between Ms. Boston's protected activity of complaining of discriminatory and arbitrary treatment; and the adverse employment action taken by TrialCard against Ms. Boston.

123.    The actions and conduct set forth herein were outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others, and therefore Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter it and others from like conduct.

---

[2] The court has dismissed Plaintiff's count three with prejudice but Plaintiff notes that she has not waived this claim and preserves it for appeal if necessary.

WHEREFORE, Plaintiff prays for the Court to find that Defendant has violated the MHRA and therefore, Plaintiff is entitled to recovery for pecuniary and nonpecuniary damages, including lost wages and benefits, out of pocket expenses, interest, mental and emotional distress, and reasonable attorney's fees and expert fees, out of pocket expenses, interest, mental and emotional distress; and any other relief this Court makes such other orders as it may deem just and proper in the circumstances.

## COUNT V

### FMLA INTERFERENCE AND RETALIATION

COMES NOW, the Plaintiff, and for Count IV of her cause of action for interference and retaliation pursuant to the FMLA states:

124. Plaintiff hereby restates and incorporates by reference, repeats and re-alleges each and every allegation contained herein this petition as if fully set forth herein this Paragraph or this count.

125. Ms. Boston was eligible as an employee of TrialCard for FMLA benefits and TrialCard was an employer as defined under the law.

126. Ms. Boston engaged in protected activity under the FMLA as described and aforementioned herein this petition.

127. Ms. Boston was entitled to FMLA leave and provided TrialCard with notice of her intent to take FMLA leave as described herein.

128. After seeking FMLA leave under her rights as an employee of TrialCard, Ms. Boston was denied FLMA leave by TrialCard, unjustifiably disciplined, targeted, nitpicked, and terminated to name a few as aforementioned herein above.

129.    The treatment Plaintiff received from TrialCard includes but is not limited to providing the FMLA administrator with false information about Plaintiff, denying Plaintiff's leave request, despite her being eligible and told that her request would be approved.

130.    Any reason for TrialCard's treatment of Ms. Boston was pretextual and unlawful as alleged herein and cannot be justified.

131.    There is a casual connection between the treatment alleged herein by Ms. Boston and her protected activity of seeking FMLA leave.

132.    The actions and conduct set forth herein were outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others, and therefore Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter it and others from like conduct.

WHEREFORE, Plaintiff prays for the Court to find that Defendant has violated the FMLA and therefore, Plaintiff is entitled to recovery for pecuniary and nonpecuniary damages, including lost wages and benefits, out of pocket expenses, interest, mental and emotional distress, and reasonable attorney's fees and expert fees, out of pocket expenses, interest, mental and emotional distress; and any other relief this Court makes such other orders as it may deem just and proper in the circumstances.

## COUNT VI-

### Violation of Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 et seq.

COMES NOW, the Plaintiff, and for Count IV of her cause of action for failure to compensate pursuant to the FLSA states:

133.    Plaintiff incorporates by reference every other paragraph set for in this First Complaint as though fully set forth herein.

134.    Plaintiff has performed compensable work for Defendant in the course of her employment with Defendant.

135.    TrialCard has failed to compensate Plaintiff for dozens of hours of work in which she has performed in the course of her employment.

136.    Plaintiff is entitled to compensation for those hours worked for TrialCard in the course of her employment.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count VI of her Petition, for a finding that she has been subjected to a violation of FLSA for unpaid wages, for an award of back pay, including lost wages; and other benefits including interest; for an award of compensatory and punitive damages; for her costs expended; for her reasonable attorneys' and expert fees and expenses, and for such other and further relief the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

i)    Defendant is ordered to make Plaintiff whole by providing appropriate back and front pay and benefits, with prejudgment interest, in amounts to be proved at trial

ii)    Plaintiff is awarded extraordinary and/or equitable relief as permitted by law, equity and any and all applicable statutory provisions related hereto;

iii)    Plaintiff is awarded all compensatory, restitutionary, and/or remedial relief;

iv)    Plaintiff is awarded pre-judgment interest and post-judgment interest, as well as her reasonable attorneys' fees, expert witness fees and other costs; and,

v)    Plaintiff is awarded such other legal and equitable relief as the Court deems appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully requests a trial by jury on all of the allegations contained in this Petition that are triable before a jury.

RESPECTFULLY SUBMITTED,

/s/ *Gerald Gray II*

Gerald Gray II, #67476
**G. GRAY LAW, LLC**
104 W. 9TH STREET, SUITE 401
KANSAS CITY, MO 64105
(O) 816-888-3145
(F) 816-817-4683
ggraylaw@outlook.com
**ATTORNEY FOR PLAINTIFF, MS. BOSTON**

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of June 2021, a copy of this Amended Complaint was filed with the Court's electronic filing system which sent notice of the same to the following counsel of record:

SMITH, ANDERSON, BLOUNT,
DORSETT, MITCHELL & JERNIGAN, L.L.P.
Zebulon D. Anderson, N.C. State Bar No. 20831
zanderson@smithlaw.com
David A. Pasley, N.C. State Bar No. 52332
dpasley@smithlaw.com
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone:     (919) 821-1220
Facsimile:     (919) 821-6800

SHOOK, HARDY & BACON L.L.P.
Carrie A. McAtee, MO #54949
Charles Rosebrough, MO Bar #71590
2555 Grand Blvd.
Kansas City, Missouri 64108
Telephone: 816.474.6550
Facsimile: 816.421.5547
*Attorneys for Defendant*

/s/ *Gerald Gray II*

Attorney for Ms. Boston